# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANTO ISLAAM, | : |
| Petitioner, | : Civ. No. 16-3664 (RBK) |
| v. | : |
| UNITED STATES OF AMERICA, | : **OPINION** |
| Respondent. | : |

**ROBERT B. KUGLER, U.S.D.J.**

Petitioner, Santo Islaam, is a federal prisoner currently incarcerated at the Federal Correctional Institute Allenwood Medium in White Deer, Pennsylvania. He is proceeding *pro se* with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's motion will be denied and a certificate of appealability shall not issue.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On direct appeal, the Court of Appeals for the Third Circuit succinctly described the underlying circumstances as follows:

> On February 24, 2012, Camden City Police arrested Appellant after observing him providing cash to another individual in exchange for certain small items. The police officers who stopped him found a loaded revolver, two zip-lock bags of heroin, and a bag of cocaine on his person. Appellant was arrested and subsequently indicted for unlawful possession of a firearm as a felon, unlawful transportation of firearms, and possession of heroin and cocaine. Appellant was represented by an Assistant Federal Public Defender and entered a plea of guilty on September 16, 2013 to Possession of a Weapon by a Convicted Felon. In exchange for this plea, the Government agreed to dismiss his other two counts at his sentencing.
>
> Subsequently, [Appellant] filed a *pro se* letter to the District Court, which it interpreted as a Motion for New Counsel and Motion to

> Withdraw his Guilty Plea. In the letter, Appellant asserted that his counsel coerced him to plead guilty by advising him that he was potentially facing a penalty of 25 years to life if convicted at trial, and that he had no realistic chance of being found not guilty. The District Court appointed him new counsel, who represented in the hearing on his withdrawal motion that, if called to testify, Appellant would state that the firearm was not his, was not in his possession at the time of arrest, and that he was not aware of its existence at the time of his arrest. Appellant's new counsel also stated that Appellant would testify that the officers who arrested him lied when they stated that they found the firearm on his person, and that it was in fact recovered from the wheel well of a nearby car.
>
> The District Court denied Appellant's motion to withdraw his plea, finding that he had not met his burden of showing sufficiently strong reasons to justify the withdrawal. The Court credited his sworn testimony of his guilt from his prior court appearances over his unsworn recantations of his plea through his attorney, and found that he had not demonstrated that his original counsel had given him incorrect legal advice, or coerced him to plead guilty.

*United States v. Islaam*, 615 F. App'x 69, 70–71 (3d Cir. 2015).

Petitioner was sentenced to a term of ten years imprisonment and three years supervised release. (*See* ECF No. 10-1 at 4-8.) Petitioner thereafter filed a notice of appeal to the Third Circuit challenging this Court's denial of his motion to withdraw his guilty plea. (*See* ECF No. 10-3.) The Third Circuit denied Petitioner's appeal on June 22, 2015. *See Islaam*, 615 F. App'x 69.

Petitioner timely filed the instant motion in June 2016. (*See* ECF No. 1.) Respondents submitted a response on January 27, 2017. (*See* ECF No. 10.) Petitioner filed a traverse thereafter. (*See* ECF No. 14.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, a motion to vacate, set aside or correct a sentence of a person in federal custody entitles a prisoner to relief if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

2

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). When considering a § 2255 motion, a district court "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (quoting *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)). Additionally, a district court must hold an evidentiary hearing on the motion if "'the files and records do not show conclusively that [the movant] was not entitled to relief.'" *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (alteration in original) (quoting *Solis v. United States*, 252 F.3d 289, 294 (3d Cir. 2001)).

### III. DISCUSSION

Petitioner raises several claims in his motion. He argues that he was denied his Sixth Amendment right to a speedy trial, that he was compelled to be a witness against himself in violation of his Fifth Amendment rights, that his federal public defender was ineffective, and there was not sufficient evidence to convict him of possession of a weapon by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1). (*See* ECF No. 1.) This Court will address each claim in turn.

#### A. Speedy Trial Violation

Petitioner asserts that he was deprived of his Sixth Amendment right to a speedy trial. (*See* ECF No. 3 at 7; ECF No. 3-3 at 9-10.) Petitioner argues that he was arrested on February 24, 2012, on state charges, and was "warehoused" in a county jail for nine months without ever being indicted. (*See* ECF No. 3 at 7.) Petitioner claims that the Camden County Prosecutor was in "collusion" with the United States Attorney's Office to keep him in jail until federal prosecutors were ready to arrest and indict him. (*See id.* at 7; ECF No. 3-3 at 9.) Petitioner states that once he was indicted on federal charges, continuances on his case were granted without his consent and that federal prosecutors engaged in "stall tactics" to postpone his trial. (*See* ECF No. 3-3 at 9-10.)

3

To determine whether a speedy trial violation has occurred, courts employ a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon,* 556 U.S. 81, 90 (2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1997)). In *Barker,* the Supreme Court set forth the factors courts should consider when determining whether a defendant's right to a speedy trial has been violated. *See Barker*, 407 U.S. at 530. The four *Barker* factors are: "(1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant. No one factor is controlling, and any violation depends on the peculiar circumstances of the case." *United States v. Sodano*, 592 F. App'x 114, 115 (3d Cir. 2014) (internal citations omitted) (citing *Barker*, 407 U.S. at 530-31).

i. *Length of Delay*

Addressing the first factor, "[t]he speedy trial clock, for Sixth Amendment purposes, begins to run from either the date of the arrest or indictment, whichever is earlier, and ends with the commencement of trial." *Id.* However, "[w]hen an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration commences on that date." *United States v. Battis*, 589 F.3d 673, 679 (3d Cir. 2009); *see also United States v. MacDonald*, 456 U.S. 1, 10 n.11 (1982) ("an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign"). Thus, an "arrest on state charges does not engage the speedy trial protection for a subsequent federal charge." *United States v. Costello*, 720 F. App'x 120, 122-23 (3d Cir. 2018); *see also Jones v. United States*, Civ. No. 13-3748, 2016 WL 81253, at *9 (D.N.J. Jan. 7, 2016).

Exactly how long of a delay is sufficient to trigger a review of the remaining *Barker* factors is unclear; however, the Supreme Court has noted that lower courts generally engage in a *Barker* analysis when the delay "approaches one year." *See United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (quoting *Doggett v. United States,* 505 U.S. 647, 652 n.1 (1992)). "[O]nce that [one-year] threshold has been passed, 'the state, not the prisoner, bears the burden to justify the delay.'" *Id.* (quoting *Hakeem v. Beyer*, 990 F.2d 750, 770 (3d Cir. 1993)).

Here, Petitioner was initially arrested on state charges on February 24, 2012. *See Islaam*, 615 F. App'x at 70. Petitioner was not indicted or arrested on federal charges until November 28, 2012. *See* Crim. No. 12-7766, at ECF Nos. 1, 2 (D.N.J.). Petitioner's scheduled trial date – and ultimately the date on which he accepted a guilty plea –was September 16, 2013.[1] (*See* ECF No. 10-1 at 42-43 (stating date Petitioner was scheduled for trial).) Thus, the relevant period of delay is the almost ten months between the federal indictment on November 28, 2012, and Petitioner's scheduled trial date September 16, 2013. *See Judge v. United States*, 119 F. Supp. 3d 270, 293 (D.N.J. 2015) ("Although Petitioner argues as to both his state and federal periods of detention, *Battis* makes clear that the period to be considered for his speedy trial claim would have begun when he was indicted on federal charges."). Since Petitioner's period of pre-indictment delay was less than one year, the first *Barker* factor weighs against Petitioner.

ii. *Reason for Delay*

The second *Barker* factor considers the reason for the delay between a petitioner's indictment and his trial. The possible reasons for delay on the part of the Government comprise three categories: "deliberate effort by the Government to delay the trial 'in order to hamper the

---

[1] Although there was a superseding indictment entered on July 10, 2013, this does not restart the speedy trial clock anew. *See Battis,* 589 F.3d at 679 n.5 (citing *United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1876)) (holding that a petitioner's "speedy trial right was not affected by the filing of a superseding indictment").

defense'"; "negligence or overcrowded courts"; and "a valid reason, such as a missing witness[.]" *See Battis*, 589 F.3d at 679 (quoting *Barker*, 407 U.S. at 531). While each of these factors weighs against the Government, "'delay caused by the defense weighs against the defendant,' including 'delay caused by the defendant's counsel.'" *See id.* at 679-80 (quoting *Vermont*, 556 U.S. at 90-91). "[T]he attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation." *See Vermont*, 556 U.S. at 90 (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). In evaluating the second *Barker* factor, delays caused by the petitioner must be subtracted from delays caused by the Government. *See Battis*, 589 F.3d at 680.

In the instant case, Petitioner, through his counsel, requested three sixty-day continuances. *United States of America v. Islaam*, Crim. No. 12-7766, at ECF Nos. 9, 10, 11 (D.N.J.). Although Petitioner contends that he "never consented to any continuance", these requests for continuances by defense counsel are still attributable to Petitioner. *See Battis,* 589 F.3d at 679-80. Consequently, the almost six-month delay caused by the requests for continuances must be subtracted from the ten months it took to bring Petitioner to trial.

Additionally, after the last continuance request expired in July 2013, several pre-trial motions were filed by both Petitioner and the Government, including a motion by Petitioner for a change of counsel. *See United States of America v. Islaam*, Crim. No. 12-7766, at ECF Nos. 12, 14, 19, 20, 23, 24 (D.N.J.). The pendency of these motions constituted most, if not all, of the "delay" between July 2013 and Petitioner's scheduled trial date in September 2013. (*See id.*) Accordingly, there is simply no evidence here that the Government induced any delay. Rather, the majority of the time it took for Petitioner to go to trial was attributable to Petitioner himself. The second *Barker* factor, therefore, also weighs against Petitioner.

*iii. Petitioner's Assertion of the Right*

The third *Barker* factor considers whether the petitioner asserted his right to a speedy trial. "An assertion of this right provides evidence that the defendant was being deprived of his constitutional right since '[t]he more serious the deprivation, the more likely a defendant is to complain.'" *Battis,* 589 F.3d at 680 (quoting *Barker*, 407 U.S. at 531). If a defendant does not assert his right, he is still able to raise a speedy trial claim, but it will be more difficult for him to prove. *See id.* at 681. The Third Circuit has previously explained that when a defendant is represented by counsel, he can demonstrate that he asserted his right to a speedy trial by identifying "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success." *Hakeem,* 990 F.2d at 766. A defendant may also identify informal correspondence he sent to the court trying to assert his right, although this evidence is considered less convincing. *See id.* "[I]f a defendant fails to adequately assert his right to a speedy trial, that means only that the third *Barker* factor will be weighed against him." *Battis,* 589 F.3d at 681.

Here, it does appear that Petitioner attempted to assert his right to a speedy trial. In his § 2255 action, Petitioner submits a motion to dismiss based on speedy trial grounds that his state public defender had filed on his behalf in state court. (*See* ECF No. 3-3 at 26-31). Petitioner also provides a letter from his federal public defender dated June 11, 2013, in which counsel states, "I am drafting a due process violation of your rights which will encompass speedy trial rights within it[.]" (*See id.* at 37.) Although it does not appear that Petitioner's federal public defender ever filed this motion, it does demonstrate that Petitioner attempted to raise a speedy trial claim in both state and federal court. Since Petitioner has presented some evidence of instruction to counsel to raise a speedy trial claim, this factor will weigh in Petitioner's favor.

*iv. Prejudice Suffered by Petitioner*

The fourth and final *Barker* factor inquires as to the prejudice suffered by Petitioner. A petitioner can establish specific prejudice by showing "that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern" about the impending trial, or that his defense was impaired as a result of the delay." *Battis,* 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532). However, a petitioner is not required to show this type of "affirmative proof" of prejudice if the delay is excessive. *See id.* Courts should generally "recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett,* 505 U.S. at 655-56. But, courts "will not accept a 'blanket statement [that] gives no indication as to the content and relevance [of the lost assistance], and how its absence impaired" the defense in the case. *United States v. Mensah-Yawson,* 489 F. App'x 606, 612 (3d Cir. 2012) (quoting *United States v. Harris,* 566 F.3d 422, 433 (5th Cir. 2009)) (alterations in original). The Supreme Court has held that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett,* 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532).

Here, Petitioner does not allege any specific prejudice, rather he appears to assert that prejudice may be presumed from the length of the delay. (*See* ECF No. 3-3 at 9-10.) While this lack of affirmative proof is not dispositive prejudice suffered, Petitioner has also not demonstrated that there was an excessive delay that would "presumptively compromise[] the reliability of [his] trial." *See Doggett,* 505 U.S. at 655-56. The delay from Petitioner's federal indictment until his scheduled trial date was ten months, six of which were caused by the federal public defender's request for continuances. This Court does not find that this delay was presumptively prejudicial. *See Hakeem*, 990 F.2d at 764 (holding that a pre-trial incarceration delay of "fourteen and one-half

8

months [. . .] is insufficient to allow an inference of prejudice solely from the length of the delay"); *see also Mensah-Yawson,* 489 F. App'x at 612 (finding that fifteen-month post-indictment delay did not give rise to an inference of prejudice). Given the reasons for the length of Petitioner's pretrial delay and his failure to allege that he suffered prejudice as a result of "oppressive pretrial incarceration," "unnecessary anxiety and concern," or that his defense was impaired as a result of the delay, this Court finds that this factor weighs against Petitioner.

Balancing the four *Barker* factors, this Court does not find that there was a violation of Petitioner's Sixth Amendment right to a speedy trial. Rather, the record demonstrates that a majority of the delay between Petitioner's indictment and his scheduled trial date was caused by Petitioner himself. Significantly, Petitioner is unable to demonstrate that he was prejudiced by any alleged delay. Petitioner is not entitled to relief on this claim.

### B. Fifth Amendment Right Against Self-Incrimination

Petitioner next asserts that he was compelled to be a witness against himself by his federal public defender, in violation of his Fifth Amendment rights. (*See* ECF No. 3-3 at 1, 9.) Petitioner claims, "I was coerce [sic] to be a witness against my self by the court Appoint Attorney[.]" (*See id.* at 9.) Petitioner further states, "I never had any intention of pleading guilty or being a witness against myself." (*See id.* at 18.) It is unclear from Petitioner's motion exactly how his counsel coerced him into becoming a witness against himself. However, in support of his claim, Petitioner provides a letter from his federal public defender, dated March 19, 2013, which states, in pertinent part:

> I regret that you feel intimidated when I address issues of custody and its many different periods of time to be served depending on the many different outcomes. Custody and the length of time your liberty will be taken from you is a very important and necessary factor for a lawyer to bring to his client's attention. I believe I have discussed this issue sufficiently and will not mention potential

9

custody exposures with you again. Please see my March 19, 2013 letter which explores custody exposure in your case.

(ECF No. 3-3 at 39.)

Petitioner also includes in his § 2255 motion what appears to be correspondence from the Government explaining Petitioner's sentencing exposure. (*See* ECF No. 3-3 at 40-42.) Next to the subheadings "Sentence Considerations" contained within the letter there are handwritten words stating, "coercion." (*See id.*) Consequently, it appears that Petitioner felt "coerced" into pleading guilty as a result of his possible sentence exposure, and thus, it appears that Petitioner is contesting the voluntariness of his guilty plea.

The Supreme Court has held that a guilty plea is not "compelled" within the meaning of the Fifth Amendment when the defendant accepted that plea knowingly and voluntarily. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In *Brady,* the Supreme Court also declined to hold that a guilty plea was "compelled" when it was motivated by a defendant's desire to avoid a lesser penalty. *See id.* at 751.

> Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so–hence the minimum requirement that his plea be the voluntary expression of his own choice.
>
> [. . .]
>
> We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.

*Brady*, 397 U.S. at 748, 751.

A guilty plea will be deemed valid as long as the defendant entered into the plea "voluntarily, knowingly, and intelligently 'with sufficient awareness of the relevant circumstances and likely consequences.'" *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady*, 397 U.S. at 748.)

Here, Petitioner's plea colloquy included the following exchange:

> THE COURT: Do you know why you're here today?
>
> DEFENDANT: Yes.
>
> *THE COURT: Has anybody forced you or threatened you in any way to make you come in here today and plead guilty?*
>
> *DEFENDANT: No.*
>
> THE COURT: Are you doing this of your own free will?
>
> DEFENDANT: Yes.

(ECF No. 10-1 at 21 (emphasis added).)

The Court went on to explain the nature of the charge against Petitioner, the elements of the crime that the government would need to prove at trial, Petitioner's maximum possible penalty, and the rights that Petitioner was giving up by accepting a guilty plea. (*See* ECF No. 10-1 at 11-37.) Petitioner then proceeded to provide a factual basis for his guilty plea. (*See id.* at 34-36.)

The record establishes that Petitioner's plea was knowing and voluntary and, in the instant action, Petitioner has not put forth any evidence to suggest that his plea was invalid. Petitioner stated on the record during his plea colloquy that he had not been forced into pleading guilty and that he was accepting the plea of his own free will. (*See* ECF No. 10-1 at 21.) Petitioner was aware of all of the relevant circumstances and likely consequences of his guilty plea. *See Bradshaw*, 545 U.S. at 183. Significantly, the only reason Petitioner appears to claim that his plea was "coerced" was because counsel informed him that he may be facing a lengthy prison sentence.

11

(*See* ECF No. 39-42.) As the Supreme Court has noted, a petitioner's choice to accept a guilty plea out of a desire to avoid a lesser penalty does not mean that his plea was "compelled." *See Brady*, 397 U.S. at 751. Accordingly, this Court finds that Petitioner's guilty plea was valid and he is not entitled to relief on this claim.

### C. Ineffective Assistance of Plea Counsel

Petitioner also raises ineffective assistance of counsel claims against his federal public defender. (*See* ECF No. 3 at 9; ECF No. 3-3 at 16-19.) Petitioner contends that his counsel was ineffective because he failed to make "any effort to obtain eyewitness testimony" and failed to file a suppression motion that Petitioner requested. (*See* ECF No. 3-3 at 16-17.)

An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland*, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough*

*v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986); *Strickland*, 466 U.S. at 689; *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The second prong of the *Strickland* test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Collins v. Sec. of Pennsylvania Dept. of Corr.*, 742 F.3d 528, 547 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).

The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. *Id.* at 696. "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." *Collins*, 742 F.3d at 547 (citing *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d. Cir. 2006)). A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [. . .] that course should be followed." *Id.*

i. *Counsel's Failure to Investigate or Interview Potential Eyewitnesses*

Petitioner alleges that counsel should have conducted further investigation into his case by interviewing potential eyewitnesses. (*See* ECF No. 16-17.) While a failure to investigate potentially exculpatory evidence or witnesses can form the basis of ineffective assistance of counsel, a failure to investigate claim still requires a petitioner to demonstrate that he was prejudiced. *See Strickland,* 466 U.S. at 690-91; *see also Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016). To successfully establish this claim, a petitioner "must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained ... and whether such

13

information, assuming admissibility in court, would have produced a different result." *Id.* (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsels failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"). Additionally, where a petitioner merely speculates as to what a witness might have said if interviewed by counsel but fails to present sworn testimony from that witness, a petitioner cannot establish the prejudice prong of *Strickland*. *See Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001).

In support of Petitioner's contention that his counsel should have investigated potential eyewitnesses to the crime, Petitioner alleges the following:

> In my discovery you will find no documents from the Federal Public Defender, or (his) investigator making any effort to obtain eye witness testimony on my behalf or for my defense. The Federal Public Defender or (his) investigator spoke to my mother yet took no statements from her, also spoke to my step-daughter and took no statements from her either. Close by you have a 24 hour Chinese restaurant and a bodega on 7th and Vine who were never interviewed nor any of the people that frequent these establishments, nor their employees or employers. Further there has to be at least 1 dozen row houses on 7th and Vine on both sides of the street that could have been questioned to provide witnesses mitigating evidence. There was also many people just standing around between 7th and 8th in Vine street the date of the arrest. There is not one witness statement from the Federal Public Defender or the United States Attorney not one witness statement.

(ECF No. 3-3 at 16-17.)

No where in Petitioner's allegations does he mention what these potential witnesses would have testified to if interviewed. Instead, Petitioner merely speculates that there may have been witnesses who could provide "mitigating evidence", but he never alleges what that evidence might

14

have been. Petitioner's failure to allege any possible information that his counsel would have obtained by interviewing these witnesses is fatal to his ability to establish the *Strickland* prong of prejudice. *See Duncan*, 256 F.3d at 202. Accordingly, Petitioner is not entitled to relief on this claim.

### ii. Counsel's Failure to File a Pre-Trial Suppression Motion

Petitioner also contends that his counsel was ineffective for failing to file a pretrial motion to suppress the government's search of Petitioner after his arrest. (*See* ECF No. 3-3 at 17.) Petitioner specifically states:

> The evidence that was seized from me approx., 2 ½ hours later was 2 dime bags of a substance later identified as Heroin. As I documented with this affidavit this second search occurred after arrest and I consider it a violation of my constitutional rights. The police had me in full custody still hand cuffed and restrained in a cell with a surveillance system in place that would prove my claim of this violation had my attorney requested this information. Due to these facts I requested a suppression hearing from my Court appointed attorney Mr. O'Malley, which he never filed.

(*Id.*)

The Third Circuit has previously "reject[ed] the notion that it is defense counsel's duty to 'make every motion in the book' in the hope that one may succeed." *United States v. Hines*, 470 F.2d 225, 231 (3d Cir. 1972) (quoting *Harried v. United States*, 389 F.2d 281, 286 (D.C. Cir. 1967)). "[E]ffective assistance does not demand that every possible motion be filed, but only those having a solid foundation." *Hines*, 470 F.2d at 231; *see also United States v. Swinehart*, 617 F.2d 336, 341 (3d Cir. 1980); *see also Austin v. United States*, Civ. No. 05-280, 2010 WL 844603, at *11 (E.D. Pa. Mar. 10, 2010).

Here, Petitioner does not put forth any evidence to suggest that his Fourth Amendment suppression motion had a solid foundation. The Supreme Court has held that a "'lawful arrest'

15

justifies 'a full search of the person.'" *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2176 (2016) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)). "[W]e hold that in the case of a lawful custodial arrest a full search of the person is [. . .] a 'reasonable' search under [the Fourth] Amendment." *Robinson*, 414 U.S. at 235. In the instant case, Petitioner concedes that the search occurred after law enforcement had already arrested him. (*See* ECF No. 3-3 at 17.) Thus, a motion challenging the search of his person after he was arrested would likely not have had a solid foundation. *See Hines*, 470 F.2d at 231. "Absent facts known to [Petitioner's] trial counsel which at least would provide a basis for belief that a motion to suppress [. . .] could succeed, [this Court] cannot find that his representation was below the standard of normal competence." *Id.* Accordingly, Petitioner is not entitled to relief on this claim.

### D. Sufficiency of Evidence

Finally, Petitioner appears to challenge the sufficiency of the evidence against him. (*See* ECF No. 3-3 at 1-2.) Petitioner states that there was "no evidence that connects me to movement of weapon (GUN) that proves that I violated interstate commerce [. . .] I have never been to this manufacturing company Smith/Wesson." (*Id.*) However, "a guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *see also United States v. McLaughllin*, 82 F. App'x 741, 743 (3d Cir. 2003). Consequently, a challenge to the sufficiency of the evidence may only be raised on collateral review to the extent that Petitioner alleges his guilty plea was not knowing or voluntary. *See McLaughllin,* 82 F. App'x at 743. Here, this Court has already determined that Petitioner's guilty plea was entered into knowingly, intelligently, and voluntarily. Thus, a challenge to the sufficiency of the evidence is not appropriate here.

However, this Court notes that there was sufficient evidence for a rational trier of fact to find Petitioner guilty of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). "A conviction under § 922(g)(1) 'requires proof that: (1) the defendant has been convicted of a crime of imprisonment for a term in excess of one year; (2) the defendant knowingly possessed the firearm; and (3) the firearm traveled in interstate commerce.'" *United States v. Dempsey,* 629 F. App'x 223, 228 (3d Cir. 2015) (quoting *United States v. Brown,* 765 F.3d 278, 291–92 (3d Cir.2014)).

Here, Petitioner challenges only the third element – that the firearm traveled in interstate commerce. (*See* ECF No. 3-3 at 1-2.) To satisfy the third element, that a firearm has been transported across state lines, the Government only needs to demonstrate that "the firearm was manufactured in a state other than the state where the possession occurred." *United States v. Shambry*, 392 F.3d 631, 634-35 (3d Cir. 2004). In Petitioner's case, the government intended to introduce evidence at trial that the firearm found on Petitioner's person was manufactured in Massachusetts, and that Petitioner had possessed it in New Jersey. (*See* ECF No. 3-3 at 7-8); *see also United States of America v. Islaam*, Crim. No. 12-7766, at ECF No. 21 at 9 (D.N.J.). This evidence, if believed, would have satisfied the interstate commerce requirement of § 922(g)(1). Accordingly, Petitioner has not demonstrated that the evidence was insufficient to support a conviction of § 922(g)(1), and he is not entitled to relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insomuch as Petitioner's claims are without merit, Petitioner's habeas petition is inadequate to proceed further and therefore, a certificate of appealability shall not issue.

## V. CONCLUSION

For the reasons stated above, the Petitioner's habeas petition is **DENIED** and a certificate of appealability shall not issue.


DATED: March 21, 2019                                   s/Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge